IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00171-RBJ-CBS

JOE RAMIREZ,
        Plaintiff,
v.

SHERIFF JOHN COOKE,
UNDER SHERIFF JACK MCGRATH,
BUREAU CHIEF STERLING GEESAMAN, and
COMMANDER GREGORY BROSWELL,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendants' Motion to Dismiss Plaintiff's

Amended Complaint.   Pursuant to the Order of Reference dated February 5, 2014 (Doc. # 10)

and the memorandum dated May 2, 2014 (Doc. # 39), this matter was referred to the Magistrate

Judge.   The court has reviewed the Motion, the pleadings, the entire case file, and the applicable

law and is sufficiently advised in the premises.


I.      Statement of the Case

At the time this civil action was filed, Mr. Ramirez was incarcerated at the Weld County Jail

in Greeley, Colorado.   (*See* Prisoner Complaint (Doc. # 1) at p. 2 of 13).   Mr. Ramirez filed the

Complaint on January 21, 2014.   (*See id.*).   On April 22, 2014, the court permitted Mr. Ramirez

to amend his Complaint to add the following sentence to paragraph 9: "[A]lso during this time the

plaintiff has suffered deterioration of his muscles to which he has lost 8 pounds."   (*See*

"Courtroom Minutes/Minute Order" (Doc. # 35)).   Mr. Ramirez alleges one claim for relief

1

pursuant to 42 U.S.C. §§ 1983 for "Fourteenth Amendment (Cruel and Unusual Punishment)" based on denial of "regular outdoor exercise," "pull-up bars," and "fresh air" between October 28, 2013 and December 26, 2013 and denial of "programming to change . . . negative behavior" and "any significant means to work his way off his ad-seg status." (*See* Doc. # 1 at 4-10 of 13).   Mr. Ramirez seeks compensatory and punitive damages, and declaratory and injunctive relief, among other things.   (*See* Doc. # 1 at 12-13 of 13).

II.     Standard of Review

Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on several grounds.[1]

> Rule 12(b)(1) concerns whether the Court has jurisdiction to hear the case before it. Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction.   Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory question, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied.   [S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.   The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.

*Miller v. U.S. Department of Navy*, No. 14-cv-00994-RBJ, 2014 WL 3632130, at *2 (D. Colo. July 23, 2014) (internal quotation marks and citations omitted).[2]

A court may also dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).

> To survive a 12(b)(6) motion to dismiss, the complaint must contain enough facts to state a claim to relief that is plausible on its face.   While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, purely conclusory allegations are not entitled to be presumed true.   However, so long as the plaintiff offers sufficient factual allegations

---

[1]     While Defendants cite Rule 12(b)(1), they do not present any argument based upon Rule 12(b)(1). (*See, e.g.*, Doc. # 38 at 1, 3-4 of 13).

[2]     Copies of unpublished decisions cited are attached to this Recommendation.

such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.

*Edmond v. Broadmoor Hotel, Inc.*, No. 13-cv-03262-RBJ-KLM, 2014 WL 4244015, at *1 (D. Colo. Aug. 27, 2014) (internal quotation marks and citations omitted).

Because Mr. Ramirez appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, "the generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (citation omitted). Although the court does not "hold the pro se plaintiff to the standard of a trained lawyer," it nonetheless relies on "the plaintiff's statement of his own cause of action." *Id.* (internal quotation marks and citations omitted). Thus, the court "may not rewrite a [complaint] to include claims that were never presented." *Id.* A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

On May 2, 2014, the court directed Mr. Ramirez to file any response he had to Defendants' Motion to Dismiss on or before June 2, 2014. (*See* Minute Order (Doc. # 40)). The court's records indicate that Mr. Ramirez's copy of the Minute Order was not returned in the mail as undeliverable. To date, he has not filed any response to the Motion. "[A] district court may not grant a motion to dismiss for failure to state a claim merely because [a party] failed to file a

3

response." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (internal quotation marks and citation omitted).   "This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   *Issa*, 354 F.3d 1177-78 (internal quotation marks and citations omitted).   "Consequently, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."   *Id.*


III.   Analysis

A.   Individual Capacity Liability

1. Personal Participation

Mr. Ramirez sues Defendants in both their individual and official capacities.   (*See* Doc. # 1 at 2-3 of 13).   To the extent that Mr. Ramirez is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.   *Kentucky v. Graham*, 473 U.S. 159, 164, 165-67 (1985).   Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.   *See Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir.1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);   *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.1996) (personal participation is an essential allegation in a civil rights action) (citation omitted).

As to Defendant Cooke, Mr. Ramirez alleges only that "Sheriff John Cooke is in charge of the

4

jail as a whole.   As such he oversees any making of policy and procedure as well as ensuring that officers are adequately trained." (*See* Doc. # 1 at 8 of 13).   As to Defendant McGrath, he alleges that "Under Sheriff Jack McGrath is a main link in the chain of command.   Like Cooke oversees the enforcement and making of policy and procedure. . . .[sic]").   (See Doc. # 1 at 9 of 13). However, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).   A defendant may not be held liable merely because of his or her supervisory position.   *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).   *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (noting that "§ 1983 could not be interpreted to incorporate doctrines of vicarious liability").   The Complaint does not set forth any facts to indicate or even imply that Defendants Cooke or McGrath participated directly in or had any direct knowledge of the alleged constitutional violations.   *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (it is incumbent upon a plaintiff to "identify specific actions taken by particular defendants" in order to make out a viable § 1983 claim);   *Lewis v. v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010) ("The record before us lacks any evidence suggesting Dr. Tripp's involvement in any of these ... unlawful activities.").   Thus, Mr. Ramirez fails to state a claim to which relief can be granted against Defendants Cooke and McGrath.

   Mr. Ramirez alleges that Defendant Geesaman "is the final step in the grievance process and the only step in appealing ad-seg status" and that Defendant Broswell "conducts ad-seg reviews monthly" and that the conditions of ad-seg were "brought to his and his supervisors['] attention through the grievance process." (*See* Doc. # 1 at 10 of 13).   However, Mr. Ramirez cannot state these Defendants' personal participation in the alleged constitutional violations based merely on their involvement in the grievance process.   *See Vigil v. Colo. Dept. Corrections*, No.

09-cv-01676, 2011 WL 1518660, at *1 (D. Colo. April 20, 2011) ("In the Tenth Circuit, constitutional allegations against an actor whose only involvement was during the grievance process do not state a claim.") (citations omitted);   *Walker v. Meyer*, No. 08-cv-01911, 2009 WL 961490, *4 (D.Colo. Apr.7, 2009) ("[M]ere participation in the grievance process is an insufficient basis for asserting a violation of constitutional rights.... The mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct.") (internal quotation marks and citations omitted). *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983");   *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (fact that Defendants rejected administrative grievances does not demonstrate personal participation in the underlying action that gave rise to the grievances);   *Whitington v. Ortiz*, No. 07-1425, 307 F. App'x 179, 193 (10th Cir. Jan 13, 2009) (dismissing § 1983 claim against Defendant who denied grievance where "[t]here is no allegation that [defendant] had any authority with respect to official CDOC policy or that he personally participated in any of the deprivations that led [plaintiff] to file the grievance in the first place").   Mr. Rodriguez fails to plead sufficient facts to demonstrate that any of the Defendants personally participated in the alleged violation of his constitutional rights.

2.   Cruel and Unusual Punishment

Mr. Ramirez alleges violation of the Fourteenth Amendment based on his status as a pre-trial detainee.   (*See* Doc. # 1 at 8 of 13).   The rights of "those persons who have been charged with a crime but who have not yet been tried on the charge," are governed by the

Fourteenth Amendment, which prohibits punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote omitted); *see also Ingraham v. Wright*, 430 U.S. 651, 672 n. 40 (1977) ("Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."). The Supreme Court recognized that the same facts could give rise to both an Eighth Amendment cruel and unusual punishment claim and a substantive due process claim under the Fourteenth Amendment. *Whitley v. Albers*, 475 U.S. 312, 326-27 (1986). However, "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . ." *Id.* at 327. *See also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (while Eighth Amendment prohibits infliction of cruel and unusual punishment upon prisoners, it applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law.") (internal quotation marks and citation omitted); *Bell*, 441 U.S. at 536 n. 17 (Punishment constrained by the Eighth Amendment can be imposed only when it "follow[s] a determination of guilt after trial or plea. . . .").

"The due process rights of a person . . . are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere*, 463 U.S. at 244 (citation omitted). "Every circuit that has considered the question has concluded that the Eighth Amendment is the primary source of substantive rights of prisoners and that, with regard to the rights of convicted prisoners, the legal standards under the Eighth and Fourteenth Amendments generally are congruous." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1494 n. 6 (10th Cir. 1990) (citations omitted).

> We agree with the views of the other circuits. Thus, we conclude that the safety and bodily integrity of convicted prisoners implicates both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's

substantive protection against state deprivation of life and liberty without due process of law, and that the legal standards under the two amendments are identical under the facts of this case.   Because the Eighth Amendment provides the primary source of protection for prisoners, we will, however, refer to the standard as an Eighth Amendment standard.

*Berry*, 900 F.2d at 1494 n. 6 (10th Cir. 1990) (citations omitted).   Mr. Ramirez's claims are thus

properly addressed under Eighth Amendment standards.   *See Lewis v. Downey*, 581 F.3d 467,

475 (7th Cir. 2009) ("anything that would violate the Eighth Amendment would also violate the

Fourteenth Amendment) (citation omitted);   *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)

("Claims for deliberate indifference to a serious medical condition or other serious threat to the

health or safety of a person in custody should be analyzed under the same standard irrespective

of whether they are brought under the Eighth or Fourteenth Amendment.").

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

CONST. Amend. VIII.   Certain conditions of confinement, if they inflict pain unnecessarily and

wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.   *Whitley

v. Albers*, 475 U.S. at 319.   Where an Eighth Amendment claim is based upon conditions of

confinement, an inmate must satisfy a two-prong test that (1) the deprivation suffered was

"objectively 'sufficiently serious,'" and (2) the defendant had a "sufficiently culpable state of mind"

or was "deliberately indifferent" to the inmate's health or safety.   *Farmer v. Brennan*, 511 U.S.

825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).

A prison condition is sufficiently serious under the objective component of the Eighth

Amendment test if it denies the inmate "the minimal civilized measure of life's necessities."

*Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1139 (D. Colo. 2012) (internal quotation marks and

citation omitted).   While the Tenth Circuit recognizes that prisoners are generally entitled to

outdoor exercise, a denial of outdoor exercise is not an Eighth Amendment violation *per se*.   *See*

*Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (holding that, where inmate was allowed to use outdoor exercise facility for one hour per week, "[a]though this amount of exposure to exercise and fresh air is still restrictive, we cannot say, without more, that it fails to satisfy the demands of the Eighth Amendment.");   *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) ("Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment."), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996);   *Smith v. Sullivan*, 553 F.2d 373, 379 (5th Cir. 1977) ("[C]onfinement for long periods of time without the opportunity for regular outdoor exercise does, as a matter of law constitute cruel and unusual punishment.").   Although there is no bright line rule for when denial of outdoor exercise becomes cruel and unusual punishment, the Tenth Circuit has held than an inmate who was denied outdoor exercise for nine months stated a claim for an Eighth Amendment violation.   *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 805 (10th Cir. 1999).   *See also Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (finding that an extended deprivation of outdoor exercise (three years) was a sufficiently serious deprivation to state an Eighth Amendment claim);

Mr. Ramirez does not allege total denial of out-of-cell exercise.   He alleges that he was incarcerated in the Weld County Jail's administrative segregation unit from October 28, 2013 to December 26, 2013, a period of 59 days (See Doc. # 1 at 4, 6-7 of 13).   During his time in administrative segregation, he was allowed to be outside his cell an hour and a half each day in a 12 foot by 12 foot room with a telephone, shower and 2 small windows.   (See Doc. # 1 at 6 of 13).   It is apparent from his allegations that Mr. Ramirez regularly participated in some exercise during the 59 days he was in administrative segregation.   As to the objective component of an Eighth

Amendment claim, the conditions which Mr. Ramirez alleges do not state a sufficiently serious deprivation to give rise to an Eighth Amendment violation.   *See Rosales v. Ortiz*, No. 06-cv-2438-EWN-CBS, 2008 WL 877173, at **3, 11 (D.Colo. Mar. 27, 2008) (adopting Magistrate Judge's recommendation that a claim related to fifty minutes of indoor exercise per week and forty-five minutes of outdoor exercise every two weeks did not satisfy the objective sufficient deprivation requirement);   *Pastorius v. Romer*, No. 96-1126, 1996 WL 528359, at * 1 (10th Cir. Sept. 17, 1996) (upholding dismissal as frivolous of inmate's claim that he only received one hour of exercise per day, inadequate fresh air, and no direct exposure to sunlight).   *Compare Parker v. Zavaras*, No. 08–cv–00737–MSK–KLM, 2011 WL 1211487 (D.Colo. March 31, 2011) (concluding that denial of outdoor exercise to an inmate for a period of two years and five months stated a claim for relief under the Eighth Amendment).

The subjective component of the Eighth Amendment test requires that Defendants had the culpable state of mind known as "deliberate indifference."   *Farmer*, 511 U.S. at 834.   Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.   *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).   An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."   *Berry*, 900 F.2d at 1496.   "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."   *Farmer*, 511 U.S. at 847. *See also Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997).

Mr. Ramirez has failed to allege deliberate indifference by the Defendants.   There are no allegations that Defendants "knew of a substantial risk of harm to plaintiff's well being resulting

from the lengthy denial of outdoor exercise and . . . disregarded that harm." *Perkins*, 165 F.3d at 810. *See also Farmer*, 511 U .S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (in order to state a claim under § 1983 for failure to supervise, a complaint must allege that the supervisor had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents") (internal quotation marks and omitted).   An allegation regarding Defendants' subjective knowledge is particularly important here given that Mr. Ramirez received "an hour and a half" of out-of-cell exercise "per day."   (See Doc. # 1 at 6 of 13).   As to the subjective component of an Eighth Amendment claim, Mr. Ramirez fails to allege deliberate indifference, as required to state a violation.

In addition to the objective and subjective elements, a plaintiff must demonstrate serious or significant injury resulting from the challenged cruel and unusual prison conditions.   *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ("a prisoner must suffer serious or significant physical or mental injury in order to be subjected to cruel and unusual punishment within the meaning of the Eighth Amendment") (internal quotation marks and citation omitted).
"A *de minimis* injury is not sufficient to state an Eighth Amendment claim based upon deprivation of exercise."   *Hardy v. Bennett*, No. 5:06–CT-3107-FL, 2008 WL 5640099, at *3 (ED.N.C. Feb.1, 2008) (citations omitted).   Mr. Ramirez alleges no facts in support of his conclusory allegation that he "has suffered from mental and physical health problems due to the defendants['] actions." (*See* Doc. # 1 at 5 of 13).   *See Strickler*, 989 F.2d at 1380–1381 ("At a minimum, an inmate must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition.").   While he alleges that he lost 8 pounds during his placement in administrative

segregation, he does not allege his previous or current weight.   As Mr. Ramirez fails to allege that

he suffered a serious injury resulting from the challenged conditions, he fails to state an Eighth

Amendment claim.   *See, e.g., Garnica v. Washington Dept. of Corrections*, 965 F. Supp. 2d

1250, 1262 (W.D. Wash. 2013) ("An eight pound weight loss in one month is not considered

significant and should not cause adverse health consequences.");   *McFadden v. Butler*, No.

3:10-3104-JMC-JRM, 2012 WL 847754, at * 4 (D.S.C. Feb. 6, 2012) (weight loss of 6 pounds in

two months failed to establish any serious or significant physical or emotional injury resulting from

the alleged conditions); *Evans v. Albany County Correctional Facility*, No. 9:05-CV-1400

GTS/DEP, 2009 WL 1401645, at *10 (even assuming that plaintiff lost 30 pounds and

experienced dizziness and headaches over a four-month period the court concludes that there is

no evidence in the record from which a reasonable fact finder could conclude that plaintiff's "

'weight loss concerns represented a condition of urgency or resulted in degeneration or extreme

pain sufficient to implicate an Eighth Amendment violation' ") (citation omitted).


   3.  Due Process

       Mr. Ramirez also alleges denial of "programming to change . . . negative behavior" and

"any significant means to work his way off his ad-seg status."   (*See* Doc. # 1 at 5 of 13).   The

necessary predicate to a due process claim is a deprivation of a protected interest.   *See*

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due

process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or

'liberty.' ") (citing U.S. Const., amend. XIV ("nor shall any State deprive any person of life, liberty,

or property, without due process of law")).   Prisoners do not have a constitutionally recognized

liberty interest in their security classification or placement.   *See Hewitt v. Helms*, 459 U.S. 460,

468 (1983) ("administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration"); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) ("classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause") (quotation and alterations omitted); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (Tenth Circuit has explicitly held that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted).

However, in *Sandin v. Conner*, the Supreme Court held that administrative segregation may implicate a liberty interest protected by the Due Process Clause if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," 515 U.S. at 484, or if it "will inevitably affect the duration of his sentence." *Id.* at 487. *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir.2006) ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484). "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination...." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485–87).

"The Tenth Circuit has listed a number of factors that can be considered in determining

whether a liberty interest exists in the context of prison segregation, *i.e.*, 'whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ... and (4) the placement is indeterminate.' " *Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1149 (D. Colo. 2012) (quoting *Estate of DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007)).   "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *DiMarco*, 473 F.3d at 1342 (citation omitted).

Here, the relevant factors weigh against an enforceable liberty interest in Mr. Ramirez's claim regarding his placement in administrative segregation between October 28 and December 26, 2013.   Mr. Ramirez has not alleged any effect of his placement in administrative segregation on the duration of his sentence.   Nor is there any allegation of atypical or extreme conditions or how the conditions of his confinement differ in any way from those of other prisoners.   *See Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) ("In *Sandin*, the Court held that the plaintiff's discipline in segregated confinement was not the sort of atypical, significant deprivation that would give rise to a liberty interest entitled to due process protection.") (citation omitted);   *DiMarco*, 473 F.3d at 1343 (inmate had access to the basic essentials of life, although her access to certain amenities was more limited than the general population);   *Blum v. Federal Bureau of Prisons*, No. 98-1055, 189 F.3d 477 at * 3 (10th Cir. (Colo.) Aug. 23, 1999) (disciplinary segregation that left inmate "without store privileges, radio, phone calls, etc. that other inmates just being held in segregation had the privileges of" was "not different in such degree and duration as compared with the ordinary incidents of prison life to be a protected liberty interest under the Due Process Clause") (internal quotation marks citations omitted).

14

Mr. Ramirez does not allege that his placement in administrative segregation is indeterminate; rather, he alleges that it was determinate, from October 28 to December 26, 2013. (*See* Doc. # 1 at 6 of 13).    Mr. Ramirez alleges "ad-seg reviews monthly."    (*See* Doc. # 1 at 10 of 13).    *See Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of administrative segregation status);    *Hunt v. Sapien*, 480 F.Supp.2d 1271, 1277 (D. Kan. 2007) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually).    Mr. Ramirez's allegations based on his administrative segregation placement for 59 days in 2013 do not state a claim to which relief can be granted for violation of his right to due process under the Fourteenth Amendment.

B.    Official Capacity Liability

To the extent that Mr. Ramirez is suing Defendants in their official capacities, "a judgment against a public servant in his official capacity imposes liability on the entity he represents. . . ." *Brandon v. Holt*, 469 U.S. 464, 471–73 (1985) (internal quotation marks and citation omitted). *See also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."); *Smith v. Plati*, 56 F.Supp.2d 1195, 1202 (D. Colo.1999) ("a suit against a government employee in his official capacity [is] tantamount to a suit against the government entity itself").    Mr. Ramirez's § 1983 claims against Defendants in their official capacities are properly brought against their employer, the Weld County Sheriff's Office.    (*See* Doc. # 1 at 2-3 of 13).

Municipalities and other local government entities such as the Weld County Sheriff's Office are "persons" under § 1983, and can therefore be sued for their constitutional torts.    *Monell v.*

*Department of Social Servs.*, 436 U.S. 658, 691 (1978).   However, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff."   *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted).   Only "its own unconstitutional or illegal policies" can supply the basis for liability.   *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).   A municipality or other governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983."   *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).   *See also Monell*, 436 U.S. at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

In order to hold Defendants liable in their official capacities under § 1983, Mr. Ramirez must allege (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."   *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).   "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").   *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

> [M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage' with the force of law. Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to

the injuries that may be caused.

*Brammer–Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188–89 (10th Cir. 2010) (internal quotation marks and citations omitted).

The policy violation must also demonstrate deliberate indifference to the rights of the plaintiff.   *City of Canton,* 489 U.S. at 388.   *See also Bryan County*, 520 U.S. at 407 ("a plaintiff who seeks to establish municipal liability ... must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.") (internal quotation marks and citation omitted);   *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.");   *Brammer–Hoelter*, 602 F.3d at 1188–89 ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).

First, as the court has determined that Mr. Ramirez fails to allege the requisite predicate of an underlying constitutional violation, he fails to state a claim for relief against Defendants in their official capacities.   *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir.2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted);   *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir.2004) (same) (citation omitted).   *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir.2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.") (internal quotation marks and citation omitted); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir.1997) ("a claim of

inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir.1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

Second, Mr. Ramirez does not identify any policy, practice, or custom of the Weld County Sheriff's Office or allege any facts to suggest a direct causal link between any action of the local government entity and a constitutional violation. *See Bryan County*, 520 U.S. at 404; *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir.1997). Nor has Mr. Ramirez alleged deliberate indifference. *See, e.g., Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (general, conclusory allegations, without supporting factual averments, are insufficient to state a claim for deliberate indifference in violation of the Eighth Amendment); *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (municipal liability attaches only when the entity's policy, practice, or custom "amounted to a deliberate indifference to the constitutional right and was the moving force behind the constitutional violation") (internal quotation marks omitted); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (A municipality may be liable for the failure to supervise or discipline its employees "only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.") (citing *City of Canton*, 489 U.S. at 390). In sum, Mr. Ramirez's allegations are insufficient to state a claim to which relief can be granted against Defendants in their official capacities under § 1983.

C.      Declaratory and Injunctive Relief

Mr. Ramirez alleges that he "was released from ad-seg status on Dec. 26th, 2013." (*See* Doc. # 1 at 6 of 13).   At the Status Conference held on April 22, 2014, he represented that he has not been returned to administrative segregation.   As he is no longer in administrative segregation or subjected to the conditions alleged in his Complaint, Mr. Ramirez does not have a viable claim for declaratory or injunctive relief pertaining his access to "fresh air, direct sunlight, regular outdoor exercise, and denial of a pull-up bar" or "jungle gyms."  (*See* Doc. # 1 at 12-13 of 13). *See Weaver v. Wilcox*, 650 F.2d 22, 27 n. 13 (3d Cir. 1981) (stating that prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir.1999) (inmate's claims for declaratory and injunctive relief regarding prison conditions were moot when he was transferred to another facility and was no longer subject to those conditions) (citations omitted);  *Ricco v. Conner*, No. 04-3261, 146 F. App'x 249, 253 (10th Cir. Aug. 8, 2005) (prisoner no longer in administrative segregation does not have viable claims pertaining to the administrative segregation sanction) (citation omitted). While Mr. Ramirez alleges that he "was told on his last review that he was subject to being ad-segged again at any time," he alleges no facts to support a reasonable expectation that he will be subjected to these conditions again.   *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party") (internal quotation marks and citation omitted).   The allegations do not support a finding that this is the type of claim to which an exception to the mootness doctrine applies.

19

D.     Qualified Immunity

To the extent that Mr. Ramirez is suing Defendants in their individual capacities,

Defendants raise the defense of qualified immunity.    Whether a defendant is entitled to qualified

immunity is a legal question.    *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*,

128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has
> alleged or shown make out a violation of a constitutional right. Second, . . . the court
> must decide whether the right at issue was clearly established at the time of the
> defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).    "A reviewing court may exercise [its] sound discretion in deciding which of

the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."    *Id.* "Qualified immunity is applicable unless" the

plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court concludes in this Recommendation that Mr. Ramirez has failed to state any

claim for violation of a constitutional right, Defendants in their individual capacities are entitled to

qualified immunity.    *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter

judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his

burden to show violation of a constitutional right).


Accordingly, IT IS RECOMMENDED that "Defendants' Motion to Dismiss Plaintiff's

Amended Complaint (ECF No. 30)" (filed May 1, 2014) (Doc. # 38) be GRANTED and that this

civil action be dismissed pursuant to Rule 12(b)(6) for failure to state a claim to which relief can be

granted.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);   *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 3rd day of December, 2014.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge